IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED

2009 JAN 15 P 3: 50

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | | |
|---|---|---|
| **LARRY HOMAN, JR.,** | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. SA:08-CA-861-OLG** |
| | § | |
| | § | |
| **THE CITY OF LIVE OAK, TEXAS** | § | |
| **AND CITY MANAGER MATTHEW** | § | |
| **SMITH, IN HIS OFFICIAL AND** | § | |
| **INDIVIDUAL CAPACITIES,** | § | |
| *Defendants.* | § | |

## PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES PLAINTIFF LARRY HOMAN, JR. (hereinafter "PLAINTIFF"), by and through his undersigned attorney of record, and, in accordance with the UNITED STATES CONSTITUTION, the AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 626(b), the CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983, and the FEDERAL RULES OF CIVIL PROCEDURE, files this, his *First Amended Original Complaint*, against DEFENDANT CITY OF LIVE OAK, TEXAS and DEFENDANT CITY MANAGER MATTHEW SMITH, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES (hereinafter collectively referred to as "DEFENDANTS"), and, for cause of action, would show unto the Court the following:

## I.
## THE PARTIES

1.  PLAINTIFF LARRY HOMAN, JR. (hereinafter "PLAINTIFF") is a sixty-two year old

citizen of the United States and a Texas resident residing at 6506 Silver Meadows, Spring Branch, Texas.

2. DEFENDANT CITY OF LIVE OAK, TEXAS is a Texas municipal corporation operating pursuant to the laws of the State of Texas. DEFENDANT CITY OF LIVE OAK has already filed its *Original Answer* on November 25, 2008. The agents and employees of DEFENDANT CITY OF LIVE OAK, TEXAS, at all times relevant hereto and in their actions described herein, were acting under color of law and under color of their authority as officials for the State of Texas and the CITY OF LIVE OAK. Furthermore, at all relevant times, DEFENDANT CITY OF LIVE OAK, TEXAS has continuously been and is now an employer engaged in an industry affecting commerce within the meaning of the AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. §§630(b), (g) and (h).

3. DEFENDANT CITY MANAGER MATTHEW SMITH (hereinafter "DEFENDANT SMITH") is an individual employed by DEFENDANT CITY OF LIVE OAK, TEXAS. DEFENDANT SMITH and has already filed his *Original Answer* on November 25, 2008.

## II.
## JURISDICTION AND VENUE

4. PLAINTIFF, on or about January 23, 2008, timely filed a *Charge of Discrimination* against DEFENDANT CITY OF LIVE OAK with the UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC), case number 451-2008-00633. A copy of the *Charge of Discrimination* is annexed to *Plaintiff's First Amended Original Complaint* as Exhibit "P-1" and is incorporated by reference as if fully set forth herein. PLAINTIFF's *Charge of Discrimination* alleged that he had been discriminated against on the basis of his age in violation of federal law.

5. PLAINTIFF, on or about July 28, 2008, received a *Dismissal and Notice of Rights* letter

from the EEOC that indicated, based upon investigation, that the agency was unable to conclude that the information obtained established violations of applicable statutes. However, the EEOC did assert that "[t]his does not certify that [DEFENDANT] is in compliance with the statutes." A copy of PLAINTIFF's *Dismissal and Notice of Rights* letter is annexed to *Plaintiff's First Amended Original Complaint* as Exhibit "P-2" and is incorporated by reference as if fully set forth herein.

6. PLAINTIFF, by filing his *Charge of Discrimination* and receiving his *Dismissal and Notice of Rights*, has complied with all conditions precedent and exhausted all administrative remedies prior to filing suit. PLAINTIFF filed his *Original Complaint* within ninety (90) days of receiving his *Dismissal and Notice of Rights* letter from the EEOC.

7. PLAINTIFF asserts claims against DEFENDANT CITY OF LIVE OAK, TEXAS for violations of his constitutional and civil rights as guaranteed by the UNITED STATES CONSTITUTION, the AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 626(b) (hereinafter "ADEA") , and the CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983, thereby invoking the federal question jurisdiction conferred upon this Court by 28 U.S.C. § 1331.

8. PLAINTIFF, in addition to the violations of the UNITED STATES CONSTITUTION, the CIVIL RIGHTS ACT OF 1871, 42 U. S. C. § 1983, and the AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 626(b), and asserts pendent common law claims against DEFENDANT CITY OF LIVE OAK for negligent supervision, training, and hiring and DEFENDANT MATTHEW SMITH for defamation, intentional infliction of emotion distress, and malicious prosecution.

9. Because the acts and omissions forming the basis of this suit occurred in Bexar County, Texas, venue is appropriate in the San Antonio Division of the Western District of Texas.

3

# III.
# STATEMENT OF FACTS

10. PLAINTIFF served as the Director of Finance for the DEFENDANT CITY OF LIVE

OAK, TEXAS beginning June 5, 2006, until his termination on October 1, 2007. To provide initial

context regarding this lawsuit, PLAINTIFF'S termination was one of a host of dismissals by

DEFENDANT CITY OF LIVE OAK through which several employees over the age of 40 were

terminated by the City Manager, DEFENDANT MATTHEW SMITH. With particular regards to

the instant matter, PLAINTIFF was replaced by Leroy Kowalik (hereinafter "Kowalik"), an old

friend of City Manager DEFENDANT SMITH. It is upon PLAINTIFF'S information and belief that

Kowalik is in his early 40s (and definitely younger than PLAINTIFF who is in his 60s).

11. Notably, and as further support of PLAINTIFF'S assertion that DEFENDANT CITY OF

LIVE OAK, TEXAS violated his statutory rights under the ADEA, Kowalik purportedly had neither

the experience nor qualifications to serve as the Director of Finance. Should this prove to be the

case, DEFENDANT SMITH'S selection was in direct violation of the *City of Live Oak Personnel*

*Policies*, § 3.05, which states, in pertinent part:

> Vacancies on the city staff are filled on the basis of merit, whether by promotion or by initial
> appointment. Selections of the best qualified persons are made on the basis of occupational
> qualifications and job-related factors such as skill, knowledge, education, experience, and
> ability to perform the specific job.

*See City of Live Oak Personnel Policies*, § 3.05, at 17. In addition to this fact, it is upon

PLAINTIFF'S information and belief that Kowalik did not even submit a job application as

otherwise required by the Application for Employment provision of the *City of Live Oak Personnel*

*Policies* which requires:

> When a specific vacancy exists, each person desiring employment with the city must submit
> a written application and other pertinent information regarding training and experience. To

4

be valid, an application must be made on the city's official application form.  Each person desiring employment with the city may obtain an application for employment from the city secretary.

*See City of Live Oak Personnel Policies*, § 3.04, at 17.  Finally, it is upon PLAINTIFF'S information

and belief that no other applicants (other than Kowalik) were even considered or interviewed by

DEFENDANT SMITH.

12. DEFENDANT SMITH justified his decision to terminate PLAINTIFF based upon the

findings of a purported investigation he initiated in the CITY OF LIVE OAK.  As PLAINTIFF was

completely unaware of this investigation, it remains indeterminate exactly how long this

investigation had been conducted or the actual resources of the CITY OF LIVE OAK that were

eventually directed towards its completion.  What does remain certain is that after the investigation

was completed, DEFENDANT SMITH accused PLAINTIFF of using city assets on city time for

PLAINTIFF'S personal gain--actions which would certainly constitute violations of the *City of Live*

*Oak Personnel Policies*.  This much has been reiterated in DEFENDANT SMITH'S *Motion to*

*Dismiss:*

> Specifically, Plaintiff while Director of Finance for the City of Live Oak conspired with Robert Tobias, the Director of Economic Development for the City of Live Oak to pursue a private business interest which was called Develop America, CDC.  Plaintiff Homan and Robert Tobias pursued this private interests [sic] on City of Live Oak time and used City of Live Oak property in furtherance of the business venture.  The actions of Plaintiff Homan and Tobias are the subject of ongoing criminal investigations.

*See Defendant City Manager Matthew Smith's Motion to Dismiss* at 1.  In the final analysis, the basis

for this allegation was little more than the simple fact that PLAINTIFF had agreed to lend his name

as an initial incorporator to the "private business interest"--DEVELOP AMERICA, CDC–referenced in

DEFENDANT SMITH'S *Motion to Dismiss*.

13. As it turns out, none of the *City of Live Oak Personnel Policies* prohibit any

**5**

employee–including PLAINTIFF–from acting in this capacity.  This much was determined by an

investigation conducted by the TEXAS WORKFORCE COMMISSION (TWC) after DEFENDANT CITY

OF LIVE OAK, TEXAS attempted to render PLAINTIFF ineligible for unemployment

compensation.  According to the TEXAS LABOR CODE, "[a]n individual is disqualified for benefits

if the individual was discharged for misconduct connected with the individual's last work."  TEX.

LAB. CODE § 207.044.  In other words, had PLAINTIFF committed work-connected

misconduct–including but not limited to the violation of any of the provisions contained in the *City

of Live Oak Personnel Policies*–the TWC would have denied PLAINTIFF'S claim for

unemployment benefits.  But this did not occur.

14. After a hearing that lasted approximately 11 hours, the TWC found DEFENDANT

SMITH'S allegation that "Plaintiff Homan and Robert Tobias pursued this private interests [sic] on

CITY OF LIVE OAK time and used CITY OF LIVE OAK property in furtherance of the business venture"

to be completely lacking in any merit whatsoever.  In the end, the TWC determined that PLAINTIFF

did not commit any work-related misconduct and awarded PLAINTIFF close to $10,000.00 in

unemployment benefits.  PLAINTIFF would respectfully ask this Court to take judicial notice of

determination and underlying basis of the TWC investigation including the decision ultimately made

in his favor.

15. With a final mention of the "private business interest" referenced in DEFENDANT

MATTHEW SMITH'S *Motion to Dismiss*, PLAINTIFF has never denied that he served as one of

the initial incorporators of DEVELOP AMERICA, CDC–a company founded by former-CITY OF LIVE

OAK Director for Economic Development Robert Tobias for the purpose of developing low-income

housing.[1] But as already determined by the TWC, there exists no law in the STATE OF TEXAS nor any rule, regulation, policy, or procedure in the CITY OF LIVE OAK that would otherwise preclude him from acting in this capacity. Furthermore, PLAINTIFFS actual involvement in DEVELOP AMERICA, CDC, as the 11-hour long TWC hearing mentioned above later proved, was minimal (basically agreeing to include his name on DEVELOP AMERICA, CDC'S *Articles of Incorporation*) and, as the TWC hearing later established, certainly did not involve PLAINTIFF'S use of either DEFENDANT CITY OF LIVE OAK'S time or the use of DEFENDANT CITY OF LIVE OAK'S property.

16. Nonetheless, DEFENDANT SMITH terminated PLAINTIFF from his position as the Director of Finance for DEFENDANT CITY OF LIVE OAK in a none-too-thinly veiled effort to replace PLAINTIFF with a younger man. Shortly after his discharge, PLAINTIFF attempted to file a grievance against DEFENDANT SMITH'S decision but, conveniently enough for DEFENDANTS, the General Grievance Policy included in the *City of Live Oak Personnel Policies* specifically precluded this recourse for any terminated employee. As stated in the policy: "Terminations, which must be approved by the city manager in consultation with the city attorney, are not grievable actions." *See City of Live Oak Personnel Policies*, §15.01, at 67. Notably, had he been allowed the opportunity, PLAINTIFF'S grievance would have been directed against DEFENDANT SMITH in his capacity as the city manager. And even though §15.02 of the *City of Live Oak Personnel Policies* allows "[e]mployees [such as PLAINTIFF] in a position at the department head level [to] appeal the city manager's decision to the city council," this option could not be exercised by PLAINTIFF because, once again, of the personnel policy stipulating that "[t]erminations . . . are not grievable

---

[1]As a matter of fact and as was determined by as a result of the TWC investigation, PLAINTIFF had filed the *Articles of Incorporation* for DEVELOP AMERICA, CDC from his home computer on a vacation day approved by DEFENDANT SMITH.

actions."

17. Despite this restriction, PLAINTIFF, nonetheless, made an effort to request of the Mayor and City Council Members of DEFENDANT CITY OF LIVE OAK "a formal grievance hearing to address [his] wrongful termination on Monday, October 1, 2007." In a 12-page letter, dated October 8, 2007, PLAINTIFF implored the City Council to "grant [him] the grievance hearing based on my unselfish, honest, and faithful service to the City and the facts contained herein." A copy of this letter is annexed hereto as Exhibit "P-3" and is incorporated by reference as if fully set forth herein. It is important to note that PLAINTIFF, as of the date this letter was written, still had no clear idea of the true reason DEFENDANT SMITH terminated him. PLAINTIFF begins by addressing the DEFENDANT SMITH'S groundless charge regarding conflict of interest:

> On October 1, 2007 Matt Smith, City Manager, informed me that he was terminating my employment at the City of Live Oak as a result of a conflict of interest between the City and me. He stated that I was using city assets on city time for my own personal gain. Present with Mr. Smith was Charlie Zech, the City Attorney. Matt Smith presented no evidence other than a very general statement about emails and an entity titled Develop America CDC. Because Rob Tobias, a co-worker, and I were of record as directors of this corporation with the Office of the Secretary of State in Austin, he stated that we were operating this corporation in direct conflict of interest with the City of Live Oak for our own personal gain. No request for an explanation was made as to our involvement in this corporation, although he indicated I was probably much less culpable (of what I have no idea) than Mr. Tobias. Short and to the point, he said he had decided to terminate me as he felt he could no longer trust me.

*See* Exhibit "P-3" at 1-2.

18. PLAINTIFF continues by describing a litany of "whistleblowing activities" that undoubtedly influenced DEFENDANT SMITH when he decided to replace PLAINTIFF with a younger employee. As PLAINTIFF described:

> It is an issue of wrongful termination due to my whistleblowing activities while performing my duties as the Finance Director of Live Oak. Mr. Smith's false and malicious statements concerning alleged conflicts of interest activities by me are a smoke screen to hide the real reasons for my termination. Let me be very clear that I am speaking on behalf of myself and

8

> no one else's. The opposite applies also, i.e., that is not fair or equitable for me to be held
> accountable for the actions and statements of others as long as I am unaware of those actions
> and statements and take no action to ratify them.

*See* Exhibit "P-3," at 1. Notably, DEFENDANT SMITH'S true motivations underlying the

termination were unknown by PLAINTIFF as of October 8, 2007, the date this letter was forwarded

to the City of Life Oak City Council.

19. In the final analysis, the person responsible for receiving, reviewing, and acting upon

PLAINTIFF'S request for a grievance was also the very same person against whom PLAINTIFF'S

grievance was directed–namely, DEFENDANT SMITH. PLAINTIFF'S request for a grievance was

unceremoniously denied by DEFENDANT SMITH in a October 16, 2007, letter to PLAINTIFF:

> I am in receipt of your correspondence dated October 5, 2007, wherein you requested an
> informal conference to address your termination in accordance with the General Grievance
> Policy of the City of Live Oak.
>
> Pursuant to City of Live Oak Personal Policy, Section 15.01, terminations which are
> approved by the City Manager in consultation with the city attorney are not grievable
> actions and as such your termination is a final act which may not be grieved.

A copy of this letter is annexed hereto as Exhibit "P-4" and is incorporated by reference as if fully

set forth herein.  As noted above, although PLAINTIFF attempted to grieve DEFENDANT

SMITH'S decision directly to the DEFENDANT CITY OF LIVE OAK City Council, this body

refused to hear PLAINTIFF'S appeal and simply deferred to the decision made by DEFENDANT

SMITH.

20. Had DEFENDANT SMITH limited his actions to following applicable *City of Live Oak*

*Personnel Policies,* his decision to terminate PLAINTIFF might, at least, have been somewhat

defensible.  However, in a continuing effort to justify his decision, DEFENDANT SMITH began

spreading defamatory and stigmatizing rumors about PLAINTIFF.  Somewhat contemporaneous to

the date PLAINTIFF was terminated (on October 1, 2007), the FEDERAL BUREAU OF INVESTIGATION

(FBI) had just concluded a two-year investigation that eventually led to 16 bribery indictments

against a host of DALLAS, TEXAS political figures including a state representative, two former City

Council members, a former Plan Commission member.  As described in an October 2, 2007, article

published in the *Dallas Morning News*:

> In a nutshell, the government's chief accusation is that public officials in Dallas were paid
> off to help [housing developer] Potashnik's company win lucrative low-income housing
> contracts–and that others aided in the bribery schemes or profited from them.

A copy of this article is annexed hereto as Exhibit "P-5" and is incorporated by reference as if fully

set forth herein.

21. According to DEFENDANT SMITH, the fact that PLAINTIFF used his personal

computer at home during a pre-approved vacation day to acknowledge his agreement to become an

initial incorporator of DEVELOP AMERICA, CDC, somehow equated–tortuously enough--to the same

type of criminal activity investigated by the FBI in the aforementioned Dallas city council bribery

probe.  In other words, DEFENDANT SMITH actually represented to others that the reason he fired

PLAINTIFF was because PLAINTIFF had engaged in bribery and other illegal activities.  Nor was

DEFENDANT SMITH shy about sharing this specious and clearly unsubstantiated belief with as

many people as possible including but not limited to other CITY OF LIVE OAK employees, members

of the CITY OF LIVE OAK City Council, and the general public.

22. To illustrate this point, shortly after he discharged PLAINTIFF from his position as the

Director of Finance, DEFENDANT SMITH talked to then-CITY OF LIVE OAK Chief of Police Mark

Stephen Jackley (hereinafter "Jackley") about PLAINTIFF'S termination.  It is PLAINTIFF'S

understanding that DEFENDANT SMITH specifically told Jackley that PLAINTIFF had been fired

because he had committed the same sort of criminal activity that motivated the FBI to investigate and eventually indict the individuals involved in the CITY OF DALLAS scandal mentioned above. Since the date of PLAINTIFF'S termination, DEFENDANT SMITH has repeated this same account to a host of individuals including at least one CITY OF LIVE OAK City Council member. It is upon PLAINTIFF'S information and belief that DEFENDANT SMITH'S defamatory action against him continue to the present.

23. In the final analysis and because of the actions and inactions taken by both DEFENDANT CITY OF LIVE OAK and DEFENDANT SMITH, PLAINTIFF was effectively denied even the appearance of due process. Furthermore, because of the false, stigmatizing, and defamatory representations made by DEFENDANT SMITH, PLAINTIFF'S standing in both the San Antonio and Live Oak communities was so seriously damaged to the extent that he could no longer obtain other employment in this area.

### IV.
### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 BY DEFENDANT CITY OF LIVE OAK, TEXAS

24. PLAINTIFF restates, realleges and re-avers and hereby incorporates by reference any and all allegations of paragraphs "1" through "23," inclusive, herein, and, in addition, avers that DEFENDANT CITY OF LIVE OAK'S actions constitute a violation of the AGE DISCRIMINATION IN EMPLOYMENT ACT of 1967.

25. Whenever PLAINTIFF pleads that DEFENDANT CITY OF LIVE OAK engaged in any act or omission, PLAINTIFF also pleads that DEFENDANT'S officers, agents, servants, employees, or representatives engaged in said act or omission in the course and scope of employment and with

the full authorization or ratification of DEFENDANT CITY OF LIVE OAK.

26. By and through his *First Amended Original Complaint*, PLAINTIFF pleads that during the course and scope of his employment, DEFENDANT CITY OF LIVE OAK intentionally and willfully violated the provisions of the ADEA by effecting his termination in order to hire a younger replacement. PLAINTIFF avers that DEFENDANT'S unlawful and discriminatory treatment on account of his age violates the provisions of the ADEA thereby justifying an award, *inter alia*, of backpay, front pay, benefits, and compensatory and liquidated damages against the DEFENDANT. The effect of this termination has been to deprive PLAINTIFF of equal employment opportunities and otherwise adversely affect his status as an employee because of his age.

27. By and through his *First Amended Original Complaint*, PLAINTIFF pleads that because DEFENDANT CITY OF LIVE OAK violated the ADEA, he is now suffering and will continue to suffer irreparable injury and monetary damages as a result of DEFENDANT'S practices unless and until this Court grants relief.

## V.
## SECOND CLAIM FOR RELIEF

## VIOLATION BY DEFENDANT CITY OF LIVE OAK AND DEFENDANT MATT SMITH OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

28. PLAINTIFF restates, realleges and re-avers and hereby incorporates by reference any and all allegations of paragraphs "1" through "27," inclusive, herein, and, in addition, avers that DEFENDANTS' actions constitute a violation of the Fourteenth Amendment to the UNITED STATES CONSTITUTION.

29. In pertinent part, the Fourteenth Amendment to the UNITED STATES CONSTITUTION provides that no state shall deprive a person of life, liberty, or property without due process of law.

The law is clear in the employment context that a liberty interest is affected when a plaintiff is terminated for reasons which were false, stigmatizing, and published, such that his standing in the community is seriously damaged or stigmatized to the extent he cannot seek or obtain other employment. For the charge to be stigmatizing, it must be worse than merely adverse; it must be such as would give rise to a badge of infamy, public scorn, or the like.

30. To this extent, PLAINTIFF asserts: (1) that he was discharged; (2) stigmatizing or defamatory charges were made against PLAINTIFF in connection with the discharge; (3) that the charges were false; (4) that no meaningful public hearing was conducted pre-discharge; (5) that the charges were made public; (6) that PLAINTIFF requested a hearing in which to clear his name; and (7) PLAINTIFF'S request was denied.

31. The instant case also invokes issues related to both substantive and procedural due process. Substantive due process presumes fairness in the content (or substance) of rules and decision. Accordingly, substantive due process is regarded as having been denied in instances where a reasonable person could only conclude that fairness had not been afforded. In comparison, procedural due process requires decisions to be reached in accordance with a procedural process that will satisfy the requirements of the Fourteenth Amendment as applied by the federal courts to the facts of a particular situation. By and through this *First Amended Original Complaint*, PLAINTIFF avers that actions taken by DEFENDANTS have effectively denied him of both his substantive and procedural due process rights.

32. **DEFENDANT CITY OF LIVE OAK, TEXAS' DEPRIVATION OF PLAINTIFFS PROCEDURAL DUE PROCESS RIGHTS**. The level of formality of due process in a typical employee termination case requires, *inter alia*, a fair hearing where the employee can prepare a

defense and question the evidence against him; and sufficient evidence to establish good cause for dismissal. In the instant case, DEFENDANTS failed to provide PLAINTIFF with even this base-line guarantee.

33. Established due process jurisprudence generally creates the requirement that in a dismissal for cause action, PLAINTIFF must at a minimum:

    a. Be advised of the cause or causes of the termination in sufficient detail fairly to enable him to show any error that may exist.

    b. Be advised of the names and the nature of the testimony of witnesses against him;

    c. After a reasonable time after such advice; be given ; be given a meaningful opportunity to be heard in his own defense.

    d. Be given an opportunity for a hearing before a tribunal that possesses an apparent impartiality toward the charges.

34. In this particular case, the fact that Section 15.01 of the *City of Live Oak Personnel Policies* stipulates that "terminations which are approved by the City Manager in consultation with the city attorney are not grievable actions" effectively denies PLAINTIFF of his procedural due process rights and is unconstitutional on its face.

35. The due process rights guaranteed by the Fourteenth Amendment contemplate that PLAINTIFF be given a meaningful opportunity to be heard in his own defense. Prohibiting a terminated employee from filing a grievance because a termination does not, according to the *City of Live Oak Personal Policies*, constitute a "grievable action" denied PLAINTIFF of every meaningful opportunity to be heard in his own defense.

36. **DEFENDANT CITY OF LIVE OAK, TEXAS' DEPRIVATION OF PLAINTIFFS SUBSTANTIVE DUE PROCESS RIGHTS.** As indicated above, due process requires that

PLAINTIFF be given an opportunity for a hearing before a tribunal that possesses an apparent impartiality toward the charges.  The fact that the decision rendered by DEFENDANT SMITH was made in the absence of any evidence that PLAINTIFF had violated any policy or procedure of the *City of Live Oak Personal Policies* clearly establishes the lack of any objectivity in this decision. In short, DEFENDANTS have arrogantly dispensed with even the appearance of any impartiality in their decision to terminate PLAINTIFF and any impartiality contemplated for substantive due process purposes simply did not exist.

37. By and through this *First Amended Original Complaint*, PLAINTIFF pleads that DEFENDANTS have violated his Fourteenth Amendment rights.  PLAINTIFF further pleads that he is now suffering and will continue to suffer damages as a result of DEFENDANTS' actions and until this Court grants relief.

## VI.
## THIRD CLAIM FOR RELIEF

## VIOLATION BY DEFENDANT CITY OF LIVE OAK AND DEFENDANT MATT SMITH OF THE DUE COURSE CLAUSE OF THE TEXAS CONSTITUTION

38. PLAINTIFF restates, realleges and re-avers and hereby incorporates by reference any and all allegations of paragraphs "1" through "37," inclusive, herein, and, in addition, avers that DEFENDANTS' actions constitute a violation of the Due Course Clause to the TEXAS CONSTITUTION which provides:

> No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

TEX. CONST. art. I, § 19.

39. It is well settled that although the due process clause of the Fourteenth Amendment and

the due course of law provision in the Texas Constitution slightly differ in their language, the differences "are without meaningful distinction." *See, e.g., University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995).

40. By and through this *First Amended Original Complaint*, PLAINTIFF specifically re-pleads all facts included in paragraphs 28 - 37 above and assert that DEFENDANTS have violated his due course rights guaranteed by the TEXAS CONSTITUTION. PLAINTIFF further pleads that he is now suffering and will continue to suffer damages as a result of DEFENDANTS' actions and until this Court grants relief.

**VII.**
**FOURTH CLAIM FOR RELIEF**

**VIOLATION OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983,**
**BY DEFENDANT CITY OF LIVE OAK, TEXAS**
**AND DEFENDANT MATT SMITH**

41. PLAINTIFF restates, realleges and re-avers and hereby incorporates by reference any and all allegations of paragraphs "1" through "40," inclusive, herein, and, in addition, avers that DEFENDANTS' actions constitute violations of the CIVIL RIGHTS ACT OF 1871.

42. The CIVIL RIGHTS ACT OF 1871, now codified as 42 U.S.C. § 1983 as federal law provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To this extent, PLAINTIFF hereby asserts that DECEDENT was: (1) deprived of a right secured by the U. S. CONSTITUTION and the laws of the United States, and (2) deprived of that right by DEFENDANTS acting under color of state law.

43. The state action requirement for standing under 42 U.S.C. § 1983 has more commonly been referred to as "color of state law," from the statute itself. PLAINTIFF is informed and believes and thereupon alleges that, in committing said acts and/or omissions, DEFENDANTS were the agents and/or employees and were acting within such agency and employment and that DEFENDANT was acting under color of state law.

44. 42 U.S.C. § 1983 requires that the conduct complained of must have deprived PLAINTIFF of some privilege or immunity secured by the U. S. CONSTITUTION or laws of the United States. As such, PLAINTIFF alleges that DEFENDANTS deprived PLAINTIFF of his Fourteenth Amendment substantive and procedural due process rights, of his rights under the ADEA, and of his rights guaranteed by the due course clause of the TEXAS CONSTITUTION and DEFENDANTS violated PLAINTIFF'S constitutional and statutory rights by engaging in actions and/or omissions that include, but are not limited to, the following:

    a.  DEFENDANTS have caused injury to PLAINTIFF as state actors.

    b.  PLAINTIFF'S right to a meaningful, fair, and impartial hearing is protected by the Fourteenth Amendment guarantee of due process.

    c.  Because of the false, defamatory and stigmatizing remarks made by DEFENDANT SMITH, PLAINTIFF had a liberty interest in his job at and, thus, is afforded both procedural and substantive due process right of protection against violations by DEFENDANTS.

    d.  In sum, DEFENDANT violated clearly established legal rights of the PLAINTIFF.

45. The Fourteenth Amendment to the U. S. CONSTITUTION provides that no state shall deprive a person of life, liberty, or property without due process of law. The central aim of the due process doctrine is to assure fair procedure when the government imposes a burden on an individual like PLAINTIFF. By their actions and as described above, DEFENDANTS have violated

PLAINTIFF'S procedural and substantive due process rights

46. **Governmental Liability Under 42 U.S.C. § 1983**. It is well-established that governmental entities are liable under 42 U.S.C. § 1983 for constitutional torts that are in compliance with the governmental entity's customs, practices, policies, or procedures. A governmental entity is liable for constitutional deprivations visited pursuant to governmental custom, practices, or procedures even though such custom, policy, or procedure has not received formal approval through the body's official decision making channels. In this case, DEFENDANT CITY OF LIVE OAK, TEXAS is liable because they sanctioned customs, practices and/or policies or procedures. To this extent, DEFENDANT SMITH'S actions were a customary practice and/or policy or procedure that were sanctioned by DEFENDANT CITY OF LIVE OAK, TEXAS, out of which deprived PLAINTIFF of his civil rights by statute and by both the TEXAS and UNITED STATES CONSTITUTIONS.

47. Liability for such entities is established under 42 U.S.C. § 1983 because such actions are a persistent, widespread practice of their employees that, although not authorized by officially-adopted policy, is so common and well-settled as to constitute a custom that fairly represents official policy. DEFENDANT CITY OF LIVE OAK, TEXAS had actual or constructive knowledge of this practice, custom, and/or policy or procedure and sufficiently numerous prior incidents establishes customs and accession to that custom by DEFENDANT'S policy makers. DEFENDANT'S actions reflect deliberate indifference to the risk that a violation of a particular constitutional or statutory rights will follow the decision.

48. By and through this *First Amended Original Complaint*, PLAINTIFF pleads that DEFENDANTS' conduct violated 42 U.S.C. § 1983. PLAINTIFF is now suffering and will

continue to suffer irreparable injury and monetary damages as a result of DEFENDANTS' practices unless and until this Court grants relief.

## VIII.
## FIFTH CLAIM FOR RELIEF

### DEFAMATORY ACTIONS BY DEFENDANT SMITH

49. PLAINTIFF restates, realleges and re-avers and hereby incorporates by reference any and all allegations of paragraphs "1" through "48"inclusive, herein, and, in addition, avers that by its actions, DEFENDANT SMITH committed defamatory actions against PLAINTIFF.

50. By and through this *First Amended Original Complaint*, PLAINTIFF pleads that DEFENDANT published a statement of fact, that the statement referred to PLAINTIFF; that the statement was defamatory; that the statement was false; that with regard to the truth of the statement, the DEFENDANT was negligent; and that PLAINTIFF suffered pecuniary injury.

51. As noted in the Statement of Facts above, DEFENDANT SMITH specifically told Jackley that PLAINTIFF had been fired because he had committed the same sort criminal activity that motivated the FBI to investigate and  eventually to indict the individuals involved in the CITY OF DALLAS scandal mentioned above.  Since the date of PLAINTIFF'S termination, DEFENDANT SMITH has repeated this same account to a host of individuals including at least one CITY OF LIVE OAK City Council member.  It is upon PLAINTIFF'S information and belief that DEFENDANT SMITH'S defamatory action against him continue to the present.

52. By and through this *First Amended Original Complaint*, PLAINTIFF pleads that because of DEFENDANT'S defamatory statements, he is now suffering and will continue to suffer monetary damages as a result of DEFENDANTS' actions unless and until this Court grants relief.

## IX.
## SIXTH CLAIM FOR RELIEF

## INTENTIONAL INFLICTION OF EMOTIONAL
## DISTRESS BY DEFENDANT MATT SMITH

53. PLAINTIFF restates, realleges and re-avers and hereby incorporates by reference any and all allegations of paragraphs "1" through "52," inclusive, herein, and, in addition, avers that DEFENDANT SMITH'S actions constitute an intentional infliction of emotional distress.

54. By and through this *First Amended Original Complaint*, PLAINTIFF pleads that DEFENDANT acted intentionally or recklessly; that DEFENDANT'S conduct was extreme and outrageous; that DEFENDANT'S conduct proximately caused PLAINTIFF emotional distress; and the emotional distress suffered by PLAINTIFF was severe.

55. DEFENDANT SMITH was acting as PLAINTIFF'S supervisor when he terminated PLAINTIFF on October 1, 2007. In addition to accusing PLAINTIFF of engaging in bribery and other illegal activities, DEFENDANT SMITH made it a point, as admitted in *Defendant City Manager Matthew Smith's Motion to Dismiss*, to report PLAINTIFF as "the subject of ongoing criminal investigations." *See Defendant Manager Matthew Smith's Motion to Dismiss* at 1. The fact that DEFENDANT SMITH made such disparaging and stigmatizing remarks in the absence of any evidence to support such accusations represents conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.

56. Additionally, the fact that DEFENDANT SMITH admittedly filed charges against PLAINTIFF, which have proven to be devoid of any merit whatsoever also represents conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. Such actions should be regarded as atrocious and must be considered utterly intolerable in a civilized

community.

57. By and through this *First Amended Original Complaint*, PLAINTIFF pleads that he is now suffering and will continue to suffer irreparable injury and monetary, actual, and exemplary damages as a result of DEFENDANT'S practices unless and until this Court grants relief.

## X.
## SEVENTH CLAIM FOR RELIEF

## NEGLIGENT HIRING, TRAINING, AND SUPERVISION BY DEFENDANT CITY OF LIVE OAK, TEXAS

58. PLAINTIFF restates, realleges and re-avers and hereby incorporates by reference any and all allegations of paragraphs "1" through "57" inclusive, herein, and, in addition, avers that by its actions, DEFENDANT CITY OF LIVE OAK, TEXAS negligently hired, trained, and supervised the individuals in a supervisory capacity over PLAINTIFF.

59. By and through this *First Amended Original Complaint*, PLAINTIFF pleads that DEFENDANT possesses a duty its employees to exercise reasonable care to ensure the supervisors of those employees are properly hired, trained, and supervised. Specifically, DEFENDANT possesses a duty to exercise reasonable care to ensure its supervisors will not take any adverse actions against its subordinates in violation of federal or state law.

60. By and through this *First Amended Original Complaint*, PLAINTIFF pleads that DEFENDANT, through its negligent acts and omissions, proximately caused actions to be taken against him. PLAINTIFF is now suffering and will continue to suffer irreparable injury and monetary damages as a result of DEFENDANT'S practices unless and until this Court grants relief.

## XI.
## EIGHTH CLAIM FOR RELIEF

## MALICIOUS CRIMINAL PROSECUTION BY
## DEFENDANT MATTHEW SMITH

61. PLAINTIFF restates, realleges and re-avers and hereby incorporates by reference any and all allegations of paragraphs "1" through "60" inclusive, herein, and, in addition, avers that by their actions, DEFENDANT MATTHEW SMITH committed malicious criminal prosecution against PLAINTIFF.

62. By and through his *First Amended Original Complaint*, PLAINTIFF pleads that DEFENDANT commenced a criminal prosecution against PLAINTIFF; that DEFENDANT initiated or procured the prosecution; that the prosecution was terminated in PLAINTIFF's favor; that PLAINTIFF was innocent of the charge; that DEFENDANT did not have probable cause for the proceedings; that DEFENDANT acted with malice; and the PLAINTIFF suffered damages as a result of the prosecution.

63. By and through his *First Amended Original Complaint*, PLAINTIFF pleads that he is now suffering and will continue to suffer damages as a result of DEFENDANTS' actions and until this Court grants relief.

## XII.
## DAMAGES

64. By and through this *First Amended Original Complaint*, PLAINTIFF pleads that DEFENDANT THE CITY OF LIVE OAK, TEXAS and its agents, employees, and representatives have caused PLAINTIFF grievous harm and damages. As a direct and proximate result of its violation of federal and state law, DEFENDANT THE CITY OF LIVE OAK, TEXAS has caused PLAINTIFF to suffer by terminating his employment. PLAINTIFF is entitled to pecuniary damages

to be determined at inquest.

65. By and through this *First Amended Original Complaint*, PLAINTIFF pleads that DEFENDANTS have caused him to suffer acute mental anguish including, but not limited to, extreme emotional distress and mental pain, low self-esteem, humiliation, belittlement, and shame. PLAINTIFF will, in all likelihood and for the balance of his life, continue to suffer mental anguish. As such PLAINTIFF is entitled to compensatory damages for future pecuniary losses, emotional pain, suffering inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

66. By and through this *First Amended Original Complaint*, PLAINTIFF pleads that DEFENDANT CITY OF LIVE OAK, TEXAS violated PLAINTIFF's civil rights with malice or reckless indifference to his federally-protected rights. As such, PLAINTIFF is entitled to damages in an amount to be determined at inquest and at the maximum rate permitted by law.

67. PLAINTIFF was forced to secure the undersigned counsel to protect his civil rights and, therefore, requests an award of attorney's fees.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF LARRY HOMAN, JR., prays that, upon final trial on the merits, he recover judgment against DEFENDANTS said judgment entitling PLAINTIFF to:

1. Compensation for all reasonable damages suffered by PLAINTIFF, including but not limited, to past and future wages and other compensation, in an amount to be determined upon inquest;

2. Compensation for compensatory and punitive damages, in an amount to be determined upon inquest;

3. Pre-judgment and post-judgment interest, at the maximum rate permitted by law;

4. All taxable costs of court expended in this lawsuit;

5.  Liquidated damages;

6.  Reasonable and necessary attorney's fees;

7.  A mandatory injunction reinstating PLAINTIFF to full employment with all pertinent employment benefits and perquisites retroactive to October 1, 2007;

8.  A mandatory injunction forbidding DEFENDANT from violating rights secured by the AGE DISCRIMINATION IN EMPLOYMENT ACT;

9.  A mandatory injunction forbidding DEFENDANT from violating rights secured by 42 U.S.C. § 1983;

10. A mandatory injunction forbidding DEFENDANT from violating rights secured by the UNITED STATES CONSTITUTION;

11. A mandatory injunction forbidding DEFENDANT from violating rights secured by the TEXAS CONSTITUTION;

12. Such other and further legal relief, either at law or equity, to which PLAINTIFF may be justly entitled.

PLAINTIFF HEREBY REQUESTS TRIAL BY JURY.

Respectfully submitted,

THE LAW OFFICE OF VINCENT A. LAZARO
The Historic Milam Building
115 E. Travis, Suite 706
San Antonio, Texas 78205
(210) 224-2257
(210) 224-2227 (Telecopier)
ATTORNEY FOR PLAINTIFF

By: _____
    VINCENT A. LAZARO, ESQ.
    SBN:  00789440

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing *First Amended Original Complaint* has been duly and properly served upon Charles S. Frigerio, LAW OFFICES OF CHARLES S. FRIGERIO, Riverview Towers, 111 Soledad, Suite 840, San Antonio, Texas 78205, *via* First-Class mail and facsimile transmission on this the 15th day of January, 2008.

VINCENT A. LAZARO, ESQ.